Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5565 | **DATE** | 6/6/2001 |
| **CASE TITLE** | TY INC. vs. PUBLICATIONS INTERNATIONAL | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   **Motion (68-1) for summary judgment is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | JUN 10 2001 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | CD-7 FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | 01 JUN -7 AM 9:19 | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TY, INC., <br><br> Plaintiff, <br><br> v. <br><br> PUBLICATIONS INTERNATIONAL, LTD., <br><br> Defendant. | No. 99 C 5565 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

On October 10, 2000, I granted plaintiff's motion for summary judgment on its copyright claim. Before me now is plaintiff's motion for summary judgment on its claims for monetary relief.

### I. Attorneys' Fees and Costs

Ty seeks reasonable attorneys' fees and costs. PIL asserts that I cannot grant Ty its attorneys' fees without first holding a hearing to determine whether PIL willfully infringed the Copyright Act, but it is wrong. Under Seventh Circuit law, a finding of willful infringement is not a necessary prerequisite to an award of attorneys' fees under the Copyright Act. See *Budget Cinema, Inc. v. Watertower Assoc.*, 81 F.3d 729, 732 (7th Cir. 1996)(lack of bad faith is not sufficient to deny attorneys' fees in copyright case); *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 942 (7th Cir. 1989) (willfulness is not necessarily a prerequisite to an award of attorneys' fees in a copyright case).

The Copyright Act provides that "the court may ... award a reasonable attorneys' fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Attorneys' fees are to be awarded to

prevailing parties as a matter of my discretion. I am to apply several nonexclusive factors to guide my discretion; in particular, I am to consider "frivolousness, motivation, objective unreasonableness (both factual and legal components), and the need in particular circumstances to advance considerations of compensation and deterrence." *Budget Cinema, Inc.*, 81 F.3d at 730 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

Awarding Ty its fees is appropriate under the circumstances because PIL's defense of the copyright claim was objectively unreasonable. The undisputed facts show that PIL approached Ty about obtaining a license before it published its collectors' guides. Ty refused to grant the license, and later it sent PIL a "cease and desist" letter. PIL nonetheless published and sold nearly $2 million worth of Beanie Baby books and magazines. Defendant's publications contained large color photographs of Ty's protected expression on virtually every page.

In its defense of this lawsuit, PIL presented the same fair use and first amendment arguments that had previously been rejected by two other courts in analogous cases. See *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993) and *Publications International, Ltd. v. Bally Mfg. Corp.*, 1982 WL 52525 (N.D. Ill. 1982). Both of these courts found that PIL published books that infringed the copyrights of others.

PIL's purported reliance on the opinion of counsel does not help it since PIL concedes that counsel never saw a finished copy of the publications, and that counsel issued only informal oral opinions based on a "dummy" version of the infringing publications. Even if PIL did not knowingly infringe the Act, its actions were exceedingly careless to the point of recklessness. In the interest of deterrence and in view of PIL's objective unreasonableness, I award Ty its attorneys' fees.

2

## II. Defendant's Profits

The Copyright Act gives a successful plaintiff a choice between statutory damages or defendant's profits attributable to the infringement. Ty has opted to seek PIL's profits.

The Act provides:

In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. 17 U.S.C. § 504(b).

The parties agree that PIL's total profits from the offending books were $1,972,163, and that PIL may deduct from this amount the cost of freight in the amount of $21,661. Four issues remain for me to decide regarding the calculation of profits; all can be determined as a matter of law.

The first issue is whether PIL can deduct the costs of all of the books published, or only those actually sold by PIL. PIL seeks to deduct the total publication cost of the four "magazine" versions of its book because it was necessary for PIL to print more than it would sell as a cost of doing business. Nearly all courts that have addressed this question have found that a copyright defendant is not entitled to reduce its liability by deducting from its gross revenue the cost of producing infringing copies that were never sold. I find that PIL may only deduct the cost of books sold, or $588,559. See *Basquiat v. Baghoomian*, 1992 WL 125529 * 2 (S.D.N.Y. 1992); *Dolori Fabrics, Inc. v. Limited, Inc.*, 662 F. Supp. 1347, 1357 (S.D.N.Y. 1987).

3

PIL's second quarrel with Ty's profit calculation is that it attributes all of the value of PIL's books to the infringing photographs and overlooks the possibility that a substantial percentage of the value of the books comes from editorial commentary. In support of its argument, PIL submitted an affidavit from Harry E. Croft, Jr., a purported expert collector who opines that the textual material contained in defendant's publications constituted 80% of the value of each publication. Plaintiff objects, quite rightly, that it has been over a year since discovery closed in this case. PIL has missed the Rule 26(a)(2)(c) deadline for filing its expert report. Consequently, under Fed. R. Civ. P. 37(c)(1), PIL is precluded from using Mr. Croft's report in support of this motion. PIL has provided no reason why it could not have disclosed this report during discovery, and it would work a hardship upon plaintiff to have to revise its damages strategy at this late stage.[1]

The parties also disagree about whether PIL can deduct a "retail display allowance" as a cost of advertising.[2] I express no opinion as to whether a retail display allowance qualifies as an advertising cost. I am excluding this deduction because defendant has produced no credible records for the retail display allowance. No mention was made of any advertising costs in response to Ty's numerous discovery requests, including a request for "all costs and expenses incurred by Defendants" and "all documents showing Defendants' advertising and promotional

---

[1] Even absent the discovery deadline, PIL's apportionment argument would likely fail because of the ratio of infringing photographs to commentary in the books. Nearly every page of PIL's books contains one or more infringing photographs, and nearly all of the commentary makes reference to the infringing photographs. As such, it is impossible to assign a value to PIL's "contributions." Apportionment becomes impossible where the defendant's additions are hopelessly intertwined with the infringing material. See *Business Trends Analysts, Inc. v. Freedonia Group, Inc.* 887 F.2d 399 (2d Cir. 1989)(affirming lower court's refusal to apportion infringer's profits between the value created by the infringing material and the value created by defendant's material).

[2] A retail display allowance refers to the fees that PIL pays to stores which furnish the racks in which its magazines are displayed for sale.

4

expense." Even at this late stage, the only documents in support of this claimed expense are a declaration from PIL's Chief Executive Officer and a self-serving computer generated print out. This is simply not enough. No deduction for advertising will be allowed.

Finally, PIL contends that Ty's award of profits should be reduced since Ty produced no copyright registration for thirty-four of the Beanie Babies in PIL's books. In response, Ty explains that twenty-two of these Beanie Babies are derivative works covered by registrations that have previously been submitted to this court. Seven other Beanie Babies that appear in PIL's books have changed names, but their registrations, too, are in the record. Ty concedes that through inadvertence, seven copyright registrations were not previously produced. Plaintiff's failure to produce seven out of several hundred copyright registrations does not affect my analysis or conclusions.

Plaintiff's motion for summary judgment on its claims for monetary relief is granted. Ty is awarded PIL's profits from the infringing publications in the amount of $1,361,943.[3] Ty is also entitled to reasonable attorneys' fees and costs and prejudgment interest.

ENTER:

James B. Zagel
United States District Judge

DATE: 6 June 2001

---

[3] I arrive at this number by subtracting the cost of books actually sold ($588,559) and the cost of freight ($21,661) from PIL's total revenue from the infringing books ($1,972,163).