Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5565 | **DATE** | 6/30/2004 |
| **CASE TITLE** | TY Inc. vs. Publications Intl LTD | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order, that Ty's motion to exclude to expert opinion and testimony of E. Gabriel Perle is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 1 20[04] | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| yp | courtroom deputy's initials | 2004 JUN 30 PM 5:12 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TY INC., | |
| Plaintiff, | |
| v. | No. 99 C 5565<br>Judge James B. Zagel |
| PUBLICATIONS INTERNATIONAL, LTD., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

In June 2003, after this case was remanded, Defendant Publications International, Ltd. ("PIL") requested permission to take additional discovery, including expert discovery on issues surrounding the copyright fair use defense, and the apportionment of profits. I ruled that additional expert discovery on the issue of apportionment could occur because "the jury should have the benefit of expert testimony" on the subject of apportionment of PIL's profits "between those attributable to the photos and those attributable to the text." *Ty, Inc. v. Publications Int'l., Ltd.*, No. 99 C 5565, 2003 WL 21294667, at *6 (N.D. Ill. June 4, 2003). Each party subsequently retained an expert witness on apportionment. PIL retained an attorney by the name of E. Gabriel Perle, and Plaintiff Ty Inc. now moves, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to exclude Perle's expert opinion and testimony.

### Analysis

"The admission of expert testimony is specifically governed by [Rule 702] and the principles announced in" *Merrell Dow Pharm. Smith v. Ford Motor Co.*, 215 F.3d 713, 717 (7th Cir. 2000). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Seventh Circuit has adopted a two-step analysis for district courts to use in evaluating expert testimony under Rule 702. The district court is required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether the testimony would assist the trier of fact in understanding the evidence or in determining a fact in issue. *Smith*, 215 F.3d at 718. The first prong relates to the reliability of the testimony, while the second prong relates to the relevance of the testimony. "In analyzing the reliability of proposed expert testimony" – which is at issue here – "the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions." *Smith*, 215 F.3d at 718.

Perle's Qualifications

Ty first claims that Perle is not qualified as an expert. Expert testimony "must be tested to be sure that the person possesses genuine expertise in a field." *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996). Perle's credentials reveal experience in the publishing industry which spans over fifty years and continues to this day, including employment for almost thirty years by one of the largest publishers in the world, Time Inc. Moreover, as noted by PIL, two district courts have judged Perle qualified as an expert witness on the business practices and customs of the publishing industry. One of those cases, *Playboy Enters. v. Dumas*, 831 F. Supp.

295 (S.D.N.Y. 1993), involved the ownership of certain artwork created for publication in Playboy Magazine. The issue could only be resolved by examination of the business customs and practices in the publishing industry concerning the acquisition of pictorial content for inclusion in magazines. *Id.* at 302-03. Perle was recognized by the court as an expert in these business practices and customs and allowed to testify at trial:

> Defendants presented the testimony on E. Gabriel Perle. Perle has had a distinguished career in the law of copyright, particularly with regard to the field of magazine publishing. Between 1956 and 1985 he worked for Time Inc. serving as Assistant General Attorney and ultimately becoming Corporate Vice President-Law, where he oversaw the publishing and business ends of Time Inc. publications. In 1986, he returned to private practice where he continues to practice publishing copyright and communications law. He testified before Congressional committees on behalf of magazine publishers during the drafting of the 1976 Act. He has twice been chair of the copyright and trademark section of the American Bar Association, has lectured extensively, was appointed by President Gerald Ford to be a commissioner of the National Commission On New Technological Uses of Copyrighted Works, and has co-authored a Publishing Law Handbook. He has also drafted hundreds of contracts between magazines and creators, artist representatives, and agents. . . . The court finds that Perle is eminently qualified to testify in the area of magazine copyright and gives his testimony great weight.

*Id.* at 304. The court recognized Perle's expert credentials in business practices, and Perle's testimony was, indeed, on the business practices of magazine publishers. More specifically, he testified as to how magazines negotiated the acquisition of freelance content, and the customary business terms of those acquisitions. *Id.* Similarly, in *Jim Henson Prods., Inc. v. John T. Brady & Assocs.*, 16 F. Supp. 2d 259 (S.D.N.Y. 1997), Perle was qualified as an expert and testified on industry customs and practices concerning the acquisition and licensing of copyrighted content. The court noted that even the opposing expert "acknowledged that Mr. Perle is one of the recognized experts in the book and periodical publishing fields" and adopted by reference the *Playboy* court's description of Perle's qualifications. *Id.* at 273.

I accept that by virtue of his fifty-plus years of experience in the publishing field, Perle has obtained expertise in the customs and practices of the publishing industry, and is certainly qualified to render an expert opinion as to those customs and practices. "Even where a witness has special knowledge or experience, qualifications to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony." 28 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 6205 (2d ed. 1993) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."); *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.")). Whether Perle's extensive experience in the publishing industry, which has given him expert knowledge of the customs and practices of that industry, has also given him expert knowledge of the valuation of things in the publishing industry, is a central issue in this case.

In general, "courts have frequently precluded a witness from testifying as an expert where the witness has specialized knowledge on one subject but offers to testify on a different subject." 28 Wright & Gold, *Federal Practice and Procedure* § 6205. Two such opinions are of particular significance here. First, in an action by a seller of coal-mining assets for fraud and breach of contract, the Sixth Circuit held that a district court committed error in admitting testimony from the plaintiff's expert. *Coal Res., Inc. v. Gulf & W. Indus.*, 954 F.2d 1263, 1269 (6th Cir. 1992). The appellate court noted that although the expert – the chief executive officer of a coal company

4

– was qualified to give expert testimony as to the development and mining of the property purchased, he was not qualified to give expert testimony as to the cost of a coal-preparation plan. *Id.* Second, in a civil rights action arising out of land condemnation, the Ninth Circuit held that the trial court did not abuse its discretion in refusing to permit a witness to testify as an expert on valuation of development rights where the witness had experience as a regulator of a regional land use program but had no experience in valuation of development rights. *Suitum v. Tahoe Reg'l Planning Agency*, 80 F.3d 359, 363 (9th Cir. 1996), *vacated on other grounds*, 520 U.S. 725 (1997). As the appellate court noted, "[i]t was not a clear error of judgment for the district court to conclude that a licensed appraiser or someone with demonstrated experience in *valuation* was the proper expert on this issue." *Id.* (emphasis in original).

In this case, "someone with demonstrated experience in *valuation* [is] the proper expert" on the issue of apportionment. *Id.* Along this line of analysis, PIL claims that Perle has "specific experience" in the "valuation of photographs and their use as a component of books and magazines," including:

- Managing the licensing and purchasing for publication of photographs in Time magazines and in the LIFE Picture Collection;

- Leading negotiations with the American Society of Magazine Photographers concerning the terms of compensation for Time's use of photographs taken by staff photographers;

- Negotiating deals with photographers, stock photo houses, and photographic rights-owners concerning the fees to be paid for various uses of photographs;

- Negotiating deals for the acquisition of libraries of photographic rights, including the Corbis collection and the Media Access Corporation's acquisition of the Bettman Archive; and

5

- Negotiating the settlement of a dispute concerning the allegedly unauthorized publication of photographs in a book by The American Golfer in which the settlement negotiations centered on the apportioned value to the book of those photographs.

In response, Ty argues that Perle's "knowledge" in regard to valuation only relates to the valuation of photographs for purposes of acquiring rights to them, which is not the same as determining what profits are driven by their use.

As an initial matter, Ty is incorrect that Perle's experience is exclusively limited to the valuation of photographs for purposes of acquiring rights to them. As noted above, he has at least once negotiated a settlement of a case in which a major component was the apportioned value to the book of the allegedly unauthorized publication of certain photographs. Nonetheless, the bulk of Perle's experience which allegedly qualifies him to be an expert does deal with the valuation of photographs for purposes of acquiring rights to them. Regardless, this limitation does not preclude him as an expert because there is a strong tie between the valuation of photographs for purposes of acquiring rights to them and determining what profits are driven by their use.[1] The valuation of photographs for purposes of acquiring rights to them for commercial publication, a critical element in determining the use value is the estimated anticipated benefits derived from acquiring the right to use. In other words, the profits one hopes to make as a partial result of using a photograph is a factor in determining how much one will pay beforehand to use it. In addition, the comparative importance of a photograph as opposed to other content materials (*i.e.*, other photographs, text, illustrations, advertisement, etc.) in contributing to the profitability

---

[1] In addition, it is difficult to comprehend how any expert could acquire significant experience in determining "what profits are driven by the use of photographs." In the ordinary course of the publishing industry, people usually try to avoid such *post facto* determinations by negotiating contracts beforehand.

6

of a commercial publication is an element that must be considered in determining the valuation for use rights. In the end, therefore, determining the value of photographs for commercial use is inevitably intertwined with determining the value of photographs in contributing to commercial profitability. Accordingly, Perle's professional experience in determining valuation for use rights qualifies him as an expert in this case.

Perle's Methodology

Along with criticizing Perle's expertise, Ty claims that his apportionment analysis is speculative and unfounded.[2] The objective of a court's "gatekeeping" function "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Indeed, the plain language of Rule 702 requires that an expert's testimony be "the product of reliable principles and methods" and that "the witness has applied the principles and methods reliably to the facts of the case." When examining an expert's methodology, I should evaluate the factual basis, data, principles, methods, and their application, in order to determine whether the reasoning or methodology underlying the testimony is scientifically valid. *United States v. Hall*, 165 F.3d 1095, 1102 (7th Cir. 1999). The methodology used need not yield mathematical exactness, but must merely provide a rational basis upon which to make a reasonable approximation. *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940);

---

[2] Indeed, while we are bound by the decision of the Court of Appeals that such apportionment must be done, there is little in the reported cases that suggests it can be done validly.

7

*Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 407 (2d. Cir. 1989). Subjective belief or unsupported speculation must be ruled out. *Hall*, 165 F.3d at 1102. "The law is clear that an expert must substantiate his opinion and that providing only an ultimate conclusion with no analysis is meaningless." *Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*, No. 00 C 191, 2003 U.S. Dist. LEXIS 5247, at *3 (N.D. Ill. Apr. 2, 2003).

Unfortunately, there is no industry or legal standard methodology for apportionment in copyright cases. However, one possible way to determine an apportionment is to evaluate the relative importance of the non-infringing content of the infringing work to the marketability of the infringing work, which may be shown through "the testimony of those who are informed by observation and experience." *Sheldon*, 309 U.S. at 408. Another method that has been used is determining a reasonable royalty without undue speculation (by existing licenses or otherwise) for the infringing work and then comparing that reasonable royalty to the non-infringing elements of the defendant's work as the basis of an apportionment. *Goldberg v. Medtronic*, 686 F.2d 1219, 1228-29 (7th Cir. 1982) (using reasonable royalty rate to apportion defendant's profits in trade secret case); *Stromberg v. Motor Devices Co. v. Detroit Trust Co.*, 44 F.2d 958, 961-62 (7th Cir. 1930) (same in patent case); *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 450 (2d Cir. 1998) (same in trade secret case); *cf. Sheldon*, 309 U.S. at 406-07 (noting lower court's refusal to consider proposed reasonable royalty as measure of apportionment because negotiation of agreement submitted as evidence was never completed, thus rendering the terms too speculative). As explained in the ALI's Restatement of the Law of Unfair Competition:

> If the trade secret amounts for only a portion of the profits earned on the defendant's sales, such as when the trade secret relates to a single component of a product marketable without the secret, an award to the plaintiff of defendant's entire profit may be unjust.

8

> The royalty that the plaintiff and defendant would have agreed to for the use of the trade secret made by the defendant may be one measure of the approximate portion of the defendant's profits attributable to the use.

*Restatement of the Law, Third, Unfair Competition*, § 45, comment f. As recognized in the *Sheldon* case, there is no reason to treat apportionment of profits any differently in copyright cases than in trade secret or patent cases.

Perle used both of these methods in rendering his opinion on apportionment. He first determined that the guides at issue were reference books and that such books are purchased based upon the amount and quality of usable information in the books. He then separated the allegedly infringing photographs into two different categories of uses in the collector's guides at issue: (1) the photographs of each Beanie Baby on the page of information related to that particular baby, and (2) the other photographs such as the cover photographs used to identify the subject of the books and the group shots used to organize the chapters in some books. For the first category, Perle determined that the photographs served purely to identify the specific Beanie Baby. After further determining that each page devoted to a specific Beanie Baby had, on average, 14 points of information (*i.e.*, name of toy, release date, retirement date, estimated value, etc.), including the identifying photograph, he used that proportion (slightly lowered in order to "err" on the side of giving a higher percentage to the photograph) to arrive at a 10% apportionment figure. In determining the apportionment for the photos relating to other uses, Perle relied on industry standard royalty fees (*i.e.*, page rates, space rates, catalog fees, etc.). Perle then plugged this "reasonable royalty" figure into a formula he derived:

$$\frac{\text{Value of photograph}}{\text{PIL's net receipts from that catalog}} \quad \times \quad \text{PIL's actual profits attributable to that catalog}$$

9

Finally, using Ty's own licenses for books and magazines similar to PIL's collector's guides, Perle generated his version of a "reasonable royalty" for all copyright and trademark uses, and used that as a basis of an apportionment.

Regarding the first group of photos, Ty claims that Perle's analysis is speculative and unfounded and that he has failed to explain how he arrived at this formula based on his experience. However, while Perle's methodology does not yield mathematical exactness, it does appear to have some rational basis informed by his years of experience in the publishing industry. *See Sheldon*, 309 U.S. at 408; *Business Trends Analysts, Inc.*, 887 F.2d at 407. His analysis is based on his professional experience with publications such as collectors guides. Based on his experience, he determined that the main objective of such guides is to identify collectibles and provide information. This led Perle to conclude that each piece of information in a collector's guide must be given approximately equal weight in relation to other pieces of information. Ty may have some valid criticisms of Perle's methodology, such as, for example, that he considered the photos as just another "fact" and gave each the same "weight" as every fact on the page or his failure to consider the "relative quality or drawing power" of the photographs in his analysis, *see Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1548 (9th Cir. 1989), but these criticisms address credibility rather than admissibility.

Regarding the second group of photos, Ty claims Perle simply "made [his method] up" and that his methodology does not identify any professional studies, personal experiences, or reliable principles or methods or any other legitimate resource on which he bases his opinion. However, Perle claims that his experience gave him a familiarity with industry standards regarding acquiring photographs for publication, and that this experience formed the foundation for determining the basis for a reasonable royalty for the photos used. As a result of his

10

experience , "[he has] detailed knowledge of the amount of compensation photographers seek for publication rights in photographs." Based on his experience and knowledge, his conclusion is that "[t]here is no better way to establish the 'value' of a given photograph than to know the compensation that is demanded for a license to publish that photograph and the value to be attributed to that photograph if it is lost." Once again, Ty may have valid criticisms of the "reasonable royalty" rates chosen by Perle or with the exact weight of each factor in his self-created formula, but these criticisms go to credibility and not admissibility.

For the reasons above, Ty's Motion to Exclude to Expert Opinion and Testimony of E. Gabriel Perle is DENIED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 30 Jan 2004