# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5565 | **DATE** | 10/21/2004 |
| **CASE TITLE** | TY, INC. vs. PUBLICATIONS INTERNATIONAL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Motion (215-1) to exclude is denied. Enter memorandum opinion and order.
(11) ■ [For further detail see order attached to the original minute order.]

✓ No notices required, advised in open court.
☐ No notices required.
☐ Notices mailed by judge's staff.
☐ Notified counsel by telephone.
☐ Docketing to mail notices.
☐ Mail AO 450 form.
☐ Copy to judge/magistrate judge.

courtroom deputy's initials: DW

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TY, INC.,

    Plaintiff,

v.

PUBLICATIONS INTERNATIONAL,
LTD.,

    Defendant.

No. 99 C 5565
Judge James B. Zagel



## MEMORANDUM OPINION AND ORDER

Defendant Publications International Ltd. ("PIL"), pursuant to Rule 15(a) of the *Federal Rules of Civil Procedure*, moves to amend its Answer to Plaintiff Ty Inc.'s ("Ty") 1999 Complaint of copyright and trademark infringement. PIL also moves to exclude the expert opinion and testimony of Ty's witness Howard Fisher. I address each motion in turn.

### I. PIL's Motion to Amend Its Answer

Plaintiff Ty filed a Complaint alleging both copyright and trademark infringement against Defendant PIL in 1999. In its Answer to Ty's Complaint, PIL offered the following affirmative defense:

> As Plaintiff alleges in its Complaint, it has licensed others who are in competition with this Defendant to publish and/or distribute books similar to those upon which this Complaint is based. This suit is an attempt by Plaintiff to control the distribution and dissemination of information regarding its products and constitutes unfair competition and an improper attempt to create a monopoly by Plaintiff so as to bar it from obtaining any relief at law or in equity.

Defendant's Answer, ¶ 60. Shortly after the close of discovery, Ty moved for summary judgment on both its copyright and trademark claims. I granted summary judgment on the copyright claims but denied summary judgment on the trademark claims. PIL appealed both summary judgment rulings, and the Seventh Circuit reversed. *Ty, Inc. v. Publ'ns Int'l. Ltd.*, 292 F.3d 512 (7th Cir. 2002), *cert. den.*, 537 U.S. 1110 (2003).

With respect to the copyright claims and defenses, I subsequently ruled that the Seventh Circuit limited the scope of remand to the issue of the defense of fair use and that PIL could not raise the defense of misuse on remand. *See Ty, Inc. v. Publ'ns Int'l, Ltd.*, No. 99 C 5565, 2003 U.S. Dist. LEXIS 9549, at *13-17 (N.D. Ill. June 5, 2003). In that June, 2003 decision, I noted that despite pleading the defense of misuse in paragraph 60 of its Answer, PIL waived the defense by failing to argue it in response to Ty's motion for summary judgment and by failing to argue copyright misuse in its appeal of my decision. *Id.* at 15.

In 2003, Ty moved for partial summary judgment on PIL's affirmative defense of trademark misuse. I granted Ty's motion, holding that paragraph 60 of PIL's Answer pled only a limited defense of misuse. *Ty, Inc. v. Publ'ns Int'l Ltd.*, No. 99 C 5565, 2004 U.S. Dist. LEXIS 10508 (N.D. Ill. May 27, 2004). In that decision, I held that the language of paragraph 60 limited PIL's allegations of misuse to Ty's actions in the present lawsuit alone and not its conduct with respect to third parties, e.g., Ty's licensees. *Id.* at *2-3 (noting that PIL "alleges that only the *present suit* is an attempt to 'control the distribution and dissemination of information regarding its products,' and that only the *present suit* 'constitutes unfair competition and an improper attempt to create a monopoly by Plaintiff'").

2

In light of that ruling, PIL now moves to amend its Answer pursuant to *Federal Rule of Civil Procedure 15 (a)* to include the following two affirmative defenses.

> 65. Copyright Misuse - Ty has used its copyrights to eliminate or control independent commentary and criticism about its products. Ty has entered into license agreements, usually as part of a litigation settlement, the terms of which give Ty control over the content of licensed publications. Ty exercised this control to extend its monopoly into the field of third-party commentary and criticism regarding Beanie Babies. At the same time that Ty exercised this control, the licenses required that these "licensed" publications disclaim any affiliation with, or sponsorship or endorsement by Ty.

> 66. Trademark Misuse - Ty has used its trademarks, and licenses thereof, to mislead consumers about the source of the content of the licensed publications, and / or Ty's sponsorship, endorsement or affiliation with the licensed publications. Ty has entered into license agreements, usually as part of a litigation settlement, the terms of which give Ty control over the content of the licensed publications. Ty exercised this control to extend its monopoly into the field of third-party commentary and criticism regarding Beanie Babies. At the same time that Ty exercised this control, the licenses required that these "licensed" publications disclaim any affiliation with, or sponsorship or endorsement by Ty.

I deny PIL's motion with respect to both defenses.

*A. PIL's Motion to Amend its Answer to Add the Defense of Copyright Misuse*

It is within my sound discretion to grant or deny this motion. *Jones v. Hamelman*, 869 F.2d 1023, 1026 (7th Cir. 1989). Under *Fed. R. Civ. P. 15 (a)*, leave to amend a complaint "shall be freely given when justice so requires." The Supreme Court has interpreted this to mean that, "[i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

PIL asserts that it satisfies the *Foman* standard with respect to the proposed copyright misuse amendment. I disagree. Prior to my June, 2004 decision that PIL ineffectively pled the full affirmative defense of copyright misuse, PIL had at least two opportunities to raise and argue the defense: first, in response to Ty's motion for summary judgment; and second, in its appeal of my decision granting summary judgment in Ty's favor on the copyright claim. At both of these junctures, PIL believed that it had pled copyright misuse as an affirmative defense in paragraph 60 of its Answer. PIL's failure to argue this defense arose prior to my decision that found the pleading inadequate. In the interim, Ty won a partial grant of summary judgment on the issue of copyright infringement, a decision that was remanded for limited consideration of the defense of fair use.

At this late stage in the proceedings, PIL's motion to amend is both untimely and prejudicial to Ty. In 2000, when PIL failed to argue its defense of copyright misuse, PIL possessed the same facts as it does now. *See Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297-98 (7th Cir. 1993) (upholding denial of motion to amend answer when defendant was in possession of facts on which proposed amendment was based for more than two years). I will not allow PIL to raise now a defense that it believed it pled but failed to argue at two prior stages in this litigation.

Furthermore, after a grant of summary judgment on the matter of copyright infringement, a subsequent appeal to the Seventh Circuit, and a remand limited to the discrete issue of fair use, it is simply too "late in the day" for PIL to attempt to amend its pleadings to include a new

defense. *Cleveland v. Porca Co.*, 38 F.3d 289, 297-98 (7th Cir. 1994) (no abuse of discretion to deny motion to amend to add new claim "after discovery was completed and after the motions for summary judgment were fully briefed"). *See also Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 269-70 (7th Cir. 1994) (no abuse of discretion to deny motions to amend after opposing party moved for summary judgment when parties failed to "take advantage of the opportunities afforded them to press their case"); *and Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 625 (7th Cir. 1987) (plaintiff's motion to amend "represents an apparent attempt to avoid the effect of summary judgment" given that plaintiff based its motion on information known before defendants moved for summary judgment). Given the significant delay since PIL first learned of the facts that purportedly support its proposed defense and given that PIL's motion would result in litigation over new issues on a matter that has already been the subject of a grant of summary judgment, PIL's motion to Amend is denied. *See Sanders v. Venture Stores*, 56 F.3d 771, 774 (7th Cir. 1995) ("granting Plaintiffs' motion for leave to amend clearly would result in undue delay, as well as prejudice to [Defendant] . . . forcing [Defendant] to re-litigate the dispute on new bases . . . and to incur new rounds of additional and costly discovery, and depriving it of the meaningful value of obtaining summary judgment").

*B. PIL's Motion to Amend its Answer to Add the Defense of Trademark Misuse*

Once again, PIL's motion cannot overcome *Foman*'s exception for amendments that risk undue delay or prejudice to the non-movant. *Foman*, 371 U.S. at 182. PIL seeks to add a new, albeit related, affirmative defense to Ty's claim of trademark infringement. Specifically, PIL's

5

amended answer would allege Ty's misuse of its trademark with respect to its relationship with licensees not party to this suit.[1]

Unlike PIL's proposed affirmative defense of copyright misuse, PIL did argue the merits of its trademark misuse defense when it responded to Ty's motion for partial summary judgment on the defense. However, because PIL originally pled only the limited affirmative defense of misuse based on the present suit, PIL's proposed amendment would require Ty to conduct additional discovery on this matter. Proposed amendments that require additional discovery by the non-movant long after the close of discovery cause prejudice sufficient to support a district court's discretionary denial of the motion to amend. *Continental Bank*, 10 F.3d at 1298 ("If the amendment were allowed, the [non-movant] would have been put to additional discovery, and thus prejudiced"). The fact that PIL's proposed amendment involves Ty's conduct with its own licensees does not mean that Ty would not suffer prejudice if forced to respond to the affirmative defense. *Continental Bank* recognized the burden amended affirmative defenses can place on the non-movant, even when the defense involves the non-movants' own behavior. *Id.* This prejudice alone compels the denial of PIL's motion.

Although delay alone is typically an insufficient basis for denying a motion to amend, delay does constitute grounds for denying a motion to amend when that delay "results in undue

---

[1] PIL suggests that its proposed amendments are "merely variations" on the defenses pled in the original answer. As pled, however, PIL's misuse defense addresses Ty's conduct only with respect to the present lawsuit. As amended, PIL's misuse defense would address Ty's course of dealing with licensees not party to this lawsuit in matters entirely unrelated to the present lawsuit, significantly increasing the scope of PIL's purported defense. All in all, here is a good example of a practice among lawyers that ought to have a label. I suggest "the practice of merely misuse." *Cf. Douglas Press v. Gamco*, No. 00 C 7340, 2004 U.S. Dist. LEXIS 7606, *2-3 (N.D. Ill. May 3, 2004) (granting defendant's motion to amend its defense of invalidity to include the "closely related" defense of inequitable conduct in suit alleging patent infringement).

prejudice to the opposing party." *Tragarz v. Keene Corp.*, 980 F.2d 411, 432 (7th Cir. 1992). In this case, PIL's delay in clarifying its "inartful pleading" comes years after the close of discovery and a grant of summary judgment on Ty's behalf on the issue of the trademark misuse defense. PIL's delay in amending is sufficiently undue to prejudice Ty. *Id. Cf. King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994) (upholding decision permitting the amendment of an answer that inadvertently included admissions, even when the motion was filed three years after the original answers were filed; the non-movant was not prejudiced by the amendment since he had not relied on the answers).

Finally, Ty has now won partial summary judgment on its motion to exclude PIL's defense of trademark misuse. Allowing PIL's amendment would deprive Ty "of the meaningful value of obtaining summary judgment." *Saunders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995) (noting that Seventh Circuit case law "uniformly advis[es] that a plaintiff's leave to amend, when filed after discovery has been closed and after a defendant's motion for summary judgment has been filed, is considered unduly delayed and prejudicial"). Therefore, PIL's motion to amend its defense of trademark misuse is also denied.

**II. PIL's Motion to Exclude the Testimony and Opinion of Expert Howard Fisher**

In June, 2003 I allowed both parties in this case to take additional expert discovery on the matter of apportioning PIL's profits "between those attributable to the photos and those attributable to the text." *Ty, Inc. v. Publ'ns Int'l, Ltd.*, 2003 U.S. Dist. LEXIS 9309, No. 99 C 5565, 2003 WL 21294667, at *6 (N.D. Ill. June 4, 2003). Ty retained Howard Fisher as its expert witness on the subject of apportionment and PIL now moves to exclude Fisher's expert

testimony and opinion pursuant to *Federal Rule of Evidence 702* and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993).

"The admission of expert testimony is specifically governed by [Rule 702] and the principles announced in" *Daubert. Smith v. Ford Motor Co.*, 215 F.3d 713, 717 (7th Cir. 2000). Expert testimony must satisfy the following standard:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Fed. R. Evid. 702*. This standard requires me to evaluate both the reliability and the relevance of expert testimony. *Daubert*, 509 U.S. at 589. In the Seventh Circuit, reliability and relevance are tested by evaluating "(1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue." *Smith*, 215 F.3d at 718 (quoting *Walker v. Soo Line R.R Co.*, 208 F.3d 581, 586 (7th Cir. 2000)). PIL's various objections to Fisher's expert opinion essentially challenge the reliability rather than the relevance of his testimony.

The reliability of an expert depends upon both the expert's qualifications and the methodology employed by that expert. *Smith*, 215 F.3d at 718; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999). An expert's qualifications need not stem from academic pedigree alone. Both the *Federal Rules* and this Circuit's case law recognize practical experience and training as bases of expertise. *Fed R. Evid. 702* (an expert may be qualified by

"knowledge, skill, experience, training, or education"); *and Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996) ("genuine expertise may be based on experience or training").

Like Gabriel Perle, the expert tendered by PIL on the same issue of apportionment, Howard Fisher has sufficient general experience in the customs and practices of the publishing industry. Fisher has worked in the publishing industry for more than 30 years creating, publishing and selling non-fiction books for consumers. He was the founding shareholder of HPBooks, a publishing company sold to Knight-Ridder newspapers. Fisher later served as the Vice President of Sales and Marketing at Knight-Ridder. Fisher also directed the sales and marketing of 10 bestsellers and is the co-author of a *New York Times* No. 1 bestseller. He has published extensively in adult non-fiction subjects on such topics as cooking, gardening and landscaping, home improvement, parenting, health, self-help, photography and business. In sum, Fisher's publishing experience includes work in sales and marketing, finance, operations, new product development, editorial and packaging.

At issue, however, is whether Fisher possesses sufficient specialized expertise to render his opinion on the topic of apportionment reliable, as required by *Daubert*. Fisher's competence in the general field of non-fiction publishing must extend to his specific testimony on the matter of apportioning the profits based on PIL's use of infringing photographs. *See Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990) ("[w]hether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony) (citing *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir. 1984)). *See also* 28 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 6205 (2d ed. 1993) (citing *Berry v. City of*

*Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of the witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question").

I have already defined the specific expertise required for this aspect of the case as "demonstrated experience in valuation." *Ty Inc. v. Publ'ns Int'l., Ltd.*, 2004 U.S. Dist. LEXIS 12037, No. 99 C 5565 at *8, n.1 (N.D. Ill. July 1, 2004). Fisher will be asked to assist the jury in determining the profits driven by PIL's use of the use of the allegedly infringing photographs. However, as I noted earlier in this case, "it is difficult to comprehend how any expert could acquire significant experience in determining 'what profits are driven by the use of photographs.'" *Id.* at 11.

Ty argues that Fisher's extensive publishing experience, and more particularly his experience in marketing and sales, renders him an expert in understanding the "drivers" of consumer purchases, including color photographs. While I cannot agree that Fisher has an "ideal" set of skills and background for evaluating the value of color photographs as a driver of consumer purchases, I believe his experience in gauging consumer interest in and consumption of adult, non-fiction books and magazines is sufficient to provide a jury with an expert opinion on apportioning the value of the photographs in the publications at issue in this case. Although Fisher offers no evidence that he has engaged in similar apportionment exercises as a part of litigation, his background in finance and profit calculations and his familiarity with consumer preferences provide a sufficient foundation in valuation from which he can answer the specific question of apportioning profits based on those preferences.

Defendant's expert Perle qualified as an expert because his experience valuing photographs for the purpose of acquiring them provided a strong base from which he could determine the value of photographs as an element of commercial profitability. As PIL points out, Fisher's expertise regarding photographs is more general (photographs constitute but one driver of consumer purchases) and he alludes to no specific experience in valuing photographs. However, Fisher's broader experience with the many drivers of consumer book and magazine purchases renders him no less qualified than Perle to quantify the profits attributable to the photographs as PIL used them in the publications currently in dispute. The importance of photographs as a driver of consumer purchases–whether on covers, in the interior pages of a book or as part of the overall packaging–is relevant to the determination of profits driven by those photographs. Therefore, Fisher's experience identifying the drivers of consumer book and magazine purchases qualifies him as an expert in this case.

PIL also challenges the methodology Fisher employs to reach his conclusions regarding the apportionment of profits attributable to PIL's use of the allegedly infringing photographs. *Fed. R. Evid. 702* permits expert testimony only when it "is based upon sufficient facts or data . . . is the product of reliable principles," and when the expert has "applied the principles and methods reliably to the facts of the case." In evaluating Fisher's testimony, I must be satisfied that he has demonstrated sufficient intellectual rigor and that his testimony is based upon his special skills. *Tyus*, 102 F.3d at 263. His methodology must not yield mathematical exactness, but it must provide a rational basis upon which to make a reasonable approximation. *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940).

In my July, 2004 decision denying Ty's motion to exclude PIL's expert opinion and testimony, I noted that "there is no industry or legal standard methodology for apportionment in copyright cases." *Ty*, 2004 U.S. Dist. LEXIS 12037 at *13. I suggested, however, that one possible methodology would be to evaluate the relative importance of the non-infringing content of the infringing work to the marketability of the infringing work based on the testimony of an expert "informed by observation and experience." *Id.* at *13-14 (quoting *Sheldon*, 309 U.S. at 408.) Similarly, an expert informed by observation and experience might determine the relative importance of the infringing content to the value of the infringing work as a whole. *See, e.g., Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 932 (7th Cir. 2003) ("[t]he apportionment that the law permits is . . . between the infringing and the noninfringing features of the defendant's work"). This is the approach selected by Fisher.

Based on his review of the ten publications at issue in this litigation, Fisher offers valuations intended to quantify the "range of profits attributable" to the photographs of Ty's products.[2] Fisher bases his apportionment valuation on his review of three elements of each publication: the cover, the interior pages, and the "overall publishing package." In analyzing these elements, Fisher relies on knowledge gained during his thirty years of experience marketing and selling books and working with magazine wholesalers and publishers, information garnered from his review of industry literature identifying the primary drivers of consumer purchases, and

---

[2]Fisher also attempts to quantify the range of profits attributable to PIL's use of photographs that included the Beanie Babies® and Ty Heart Logo® trademarks. For the moment, Fisher's testimony is limited to the issue of apportioning profits due to any copyright infringement. Therefore, PIL's challenge to Fisher's testimony based on the possibility that Fisher's calculations could exceed 100% of profits when considering both copyright and alleged trademark infringement are premature. Moreover, that challenge affects the weight to be given Fisher's testimony, not the admissibility of his opinion.

12

information provided by Ty regarding the value of licenses Ty issues to other publishers producing guidebooks to Ty products.

PIL argues that Fisher's report offers only subjective conclusions unsupported by meaningful analysis. *See, e.g., GE v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered"). In fact, Fisher offers only a limited explanation of how his analysis of the cover photographs, interior photographs, and overall packaging of the books led to his conclusion that the profits attributable to PIL's use of the allegedly infringing photographs range from 75% to 90% of the total profits for each publication.

However, Fisher does offer a rational basis for his conclusions informed by his years of experience in the publishing industry. *Sheldon*, 309 U.S. at 408. Relying on both his own experience and an industry study identifying cover art, impulse purchases and the display of products as the three primary drivers of consumer book purchases, Fisher concludes that PIL's covers were the primary driver of consumer purchases of both the books and magazines. Fisher also bases his estimates of profits attributable to PIL's use of allegedly infringing photographs on the number of photographs on the interior pages of the publications and his assessment of the value of photographs to "overall consumer appeal," "what the books might look like without color photographs," the "emphasis in the marketing and sales materials on the display of color photographs," and the "high value placed on Ty licenses for the photographs" in similar publications.

13

Unlike *Bucklew*, where the testimony of plaintiff's expert had "no factual basis whatsoever," Fisher's estimates are based on the use of the allegedly infringing photographs on the covers, on the photographs that appear on 84% to 94% of the interior pages of the various publications in dispute, and on the emphasis in the marketing and sales materials on the display of the photographs. *Bucklew*, 329 F.3d at 933. Fisher's reliance on these factors, in addition to his own knowledge of the value of the photographs to the overall profitability of the books and magazines based on his own experience publishing, selling and marketing books, is sufficient for Fisher to escape the allegation that the conclusions in his report are connected to his analysis only by *ipse dixit*. PIL is free to challenge the correctness of Fisher's conclusions (e.g., his leap from the total number and location of the photographs that appear in *For the Love of Beanie Babies* and the importance of those photographs to consumer appeal to his estimate that 75% to 90% of PIL's profits from the sale of that book are attributable to its use of photographs of Ty's products) when Fisher testifies.

PIL also asserts that Fisher's analysis is meaningless because it fails to attribute value to any content in the publications other than the photographs. However, in calculating the range of profits attributable to the photographs found on the cover and interior of PIL's publications (between 75% and 90% depending upon the publication), Fisher ascribed the remainder (10% to 25%) to the non-infringing content of PIL's publications. The degree to which Fisher appropriately valued the non-infringing content relative to the allegedly infringing photographs may raise doubts about the credibility of his conclusions, but not the admissibility of his testimony.

PIL's complaint that Fisher engages in excessive "speculation" is not unfamiliar to this court. I considered and rejected the same charge when it was leveled against PIL's expert Gabriel Perle. Given the lack of standard methodology for apportioning profits in cases like this, it is not surprising that there are speculative components to each expert's evaluation of the offending publications. In the instant case, both experts' conclusions are based on their significant, although different, experiences in the publishing industry. It will be for the jury to decide which expert's testimony is more reasonable and offers a better approach for apportioning profits.

PIL's remaining criticisms of Fisher's analysis raise questions about the credibility, not admissibility, of Fisher's testimony. These include: Fisher's lack of clarity in explaining how his valuations correspond to the different uses of photographs within each publication; the alleged inconsistency between the industry study on which Fisher relied and his conclusions; the quality of the other sources Fisher cited as references and the extent to which he relied on them; the weight Fisher accorded other factors arguably influencing PIL's profits or other recognized drivers of consumer purchases; Fisher's decision to not compare PIL's publications to competitors' publications as part of his analysis; Fisher's purported over-emphasis on the photographs that appear on the publications' covers; and the similarity of Fisher's estimates for each of the ten publications.[3] These may be valid criticisms, but they do not render Fisher's testimony inadmissible.

---

[3] PIL also challenges Fisher's expertise in and methodology for apportioning profits based on PIL's alleged trademark infringement. I reserve judgment on these allegations until such time as Ty seeks to introduce Fisher's testimony on this issue. This ruling extends only to Ty's use of Fisher's testimony with regard to the copyright infringement claims.

Finally, PIL alleges that Fisher's opinion is inadmissible because he "farm[ed] out substantial issues" in the process of completing his report. Fisher's consultations with three other industry sources in the process of preparing his report is not a sufficient basis to exclude his testimony, as Fisher does not appear to have relied on their opinions. However, even if Fisher did rely on their research or opinions, PIL raised no credible ground for excluding Fisher's testimony. *See Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000) (expert testimony may rely on the opinions or data of others unless "the testifying expert's opinion is too speculative" or "the underlying basis is faulty") (citations omitted); and *Fed R. Evid. 703* ("[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing").

In sum, the apportionment of profits based on PIL's use of the allegedly infringing photographs is a speculative endeavor at best. While elements of Fisher's analysis are subject to challenge, I believe that his analysis is as likely to aid the jury in its task of apportioning profits as is the testimony of PIL's expert Gabriele Perle. PIL remains free to challenge Fisher's credibility and his conclusions on cross-examination and to argue that in light of these deficiencies Fisher's conclusions should be given little weight.

In its reversal of my earlier decision in this case, the Seventh Circuit noted that I "erred in refusing to apportion PIL's profits between those attributable to the photos and those attributable to the text." *Ty, Inc.*, 292 F.3d at 524. Judge Posner specifically noted that "[a]ll that Ty is entitled to if it proves infringement on remand is the profits attributable to the photos." *Id.* At PIL's request, I agreed that the jury should have the benefit of expert testimony on this subject. However, I never expressed certainty that reliable expertise in this area could be found. Based on

what I have seen with both experts, their opinions may be the best that can be done. In light of Judge Posner's opinion requiring the apportionment of profits, I am reluctant to reject both experts. Moreover, even if I was inclined to reject both, it is a question that ought to be resolved on a full record in context at trial.

For the reasons stated above, PIL's Motion to Amend Its Answer is DENIED, and its Motion to Exclude the Expert Opinion and Testimony of Howard Fisher is also DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 21 Oct 2004