# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TY, INC.,

      Plaintiff,

         v.

PUBLICATIONS INTERNATIONAL,
LTD.,

      Defendant.

No.  99 C 5565
Judge James B. Zagel

## <u>MEMORANDUM OPINION AND ORDER</u>

This is the second motion for summary judgment (in effect a delayed cross-motion) that I have entertained from the parties to this litigation: Ty, Inc. ("Ty"), the maker of the famed Beanie Babies plush toys, and Publications International, Ltd. ("PIL"), the publisher of a series of books and magazines designed as collectors' guides to Ty's products.  PIL has moved for summary judgment of Ty's claim of trademark infringement, presenting two arguments in support of its motion.[1]  First, PIL argues that Ty has no claim of common law trademark infringement because: a) Ty has not used the mark in connection with collectors' guides; b) the actions of Ty's licensees are not sufficient to form a legal basis for liability; and c) even if Ty has asserted a legal claim of common law trademark infringement, PIL has a nominative fair use defense.  Second, PIL argues that Ty's claim for infringement of a registered trademark must fail because PIL has a nominative

---

[1]Ty also asserted a claim for trademark dilution but withdrew this count in response to PIL's assertion that it had no intention to resume publication of the accused books and magazines.

fair use defense for all of the alleged infringing uses; or alternatively, because Ty failed to offer facts demonstrating a likelihood of confusion.[2] I review each of PIL's arguments in turn.

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the moving party presents a prima facie case showing that it is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleading but must set forth specific facts showing that a genuine issue for trial exists. *Id*. at 256-57.

## I. Ty's Claim of Common Law Trademark Infringement

### A. The Scope of Ty's Common Law Claim

The parties vigorously dispute the scope of Ty's common law claim. PIL insists that Ty's claim of common law infringement, based on 15 U.S.C. § 1125(a), unnecessarily duplicates its

---

[2]Count IV of Ty's Complaint appears to raise state law claims based on the allegations made within the rest of the Complaint. PIL moved for summary judgment of this count, arguing that the claims were duplicative of Ty's federal claims in Count I (trademark infringement) and would be governed by my decision on the issue of trademark infringement. *See McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1174 n.9 (7th Cir. 1986) (holding Lanham Act analysis dispositive of claim under Illinois Deceptive Trade Practices Act, which in turn is dispositive of unfair competition claim under Illinois common law). Ty failed to respond to PIL's arguments, waiving any argument that the Count was not governed by the resolution of its trademark infringement claims. Therefore, the claims embedded in Count IV remain only to the extent that Ty's federal claim of trademark infringement survives this motion for summary judgment.

claims based on 15 U.S.C. § 1114(1), because both claims relate to Ty's registered marks ("Beanie Babies" and the Ty Heart Logo) rather than to any unregistered trademarks. Ty naturally disagrees, stating that it alleged "infringement of its registered trademarks as well as violation of Section 43(a) because PIL has infringed Ty's registered trademarks as well as its unregistered trademark rights that Ty owns through its licensees' use of the Beanie Babies and TY HEART LOGO trademarks." *Pl. Resp. Mem.* at 6. Ty narrows the scope of its common law claim when it states that "Ty's Section 43(a) claim stems, *in part*, from the common law trademark rights that Ty has obtained by virtue of its licensees' use of Ty's trademarks." *Id.* (emphasis added). However, Ty never offers another basis for its common law § 43(a) claim. Therefore, I find that its claim is limited to any common law trademark rights Ty obtained through its licensees' use of its trademarks.

### B. Ty's Licensees and its Common Law Trademark Infringement Claim

At issue is whether Ty can claim common law rights in two marks ("Beanie Babies" and the Ty Heart Logo) as they are used in books and magazines. Whether Ty can establish common law rights in these marks depends on the conduct of Ty and the parties to whom it licensed use of the marks. Generally speaking, licensors can acquire protectable interests in a trademark by use of a controlled license.

> Ownership rights in a trademark or service mark can be acquired and maintained through the use of the mark by a controlled licensee even when the first and only use of the mark was made, and is being made, by the licensee. This is because use of a designation as a mark by a qualified licensee inures to the benefit of the licensor, who as a result becomes owner of the trademark or service mark rights in the designation.

J. Thomas McCarthy, 4 *McCarthy on Trademarks and Unfair Competition* §18:46 (2004).  In this case, Ty issued licenses to several publishers, which used Ty's marks in connection with the publication of books, magazines and even websites about Ty's plush toy products.

In order to avoid summary judgment of its common law claims, Ty must point to facts demonstrating endorsement, sponsorship or affiliation between Ty and its licensees in the mind of consumers.  An association of endorsement, sponsorship or affiliation in the mind of consumers is a necessary predicate to a claim of common law rights, which exist to protect such an association after it is established.  *See Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 436 (7th Cir. 1999) ("The 'keystone' of trademark infringement is 'likelihood of confusion' as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers") (quoting *Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960, 964 (6th Cir. 1987)).

Ty appears to assert that its licenses, in and of themselves, are "compelling evidence" that it established common law rights in its trademarks as used in connection with books and magazines.  *Pl. Resp. Mem.* at 6-7.  These licenses (and settlement agreements that in some cases preceded the licenses) generated over $2.6 million in royalties for Ty.  However, as noted above, common law rights in marks stem from endorsement, sponsorship or affiliation (or the appearance thereof); alone, the existence of licensing agreements and the revenue generated under those agreements are neither compelling evidence of such an association nor even minimally sufficient to withstand PIL's motion for summary judgment.

Both parties direct my attention to the language of the actual licensing agreements as evidence that Ty did (or, as PIL argues, did not) establish common law trademark rights by virtue

of its licensees' use of the marks.  PIL makes the better argument, however, when it suggests that

the language of these agreements clearly required licensees to hold out their licensed products in

a way that prevented consumers from forming any association of sponsorship or endorsement by,

or any other affiliation with Ty.  A typical licensing agreement between Ty and a licensee reads,

in relevant part, as follows:

> 8. **COPYRIGHT AND TRADEMARK NOTICES AND LICENSING STATEMENT**.
>
> a) The Licensee shall cause to be printed, on the copyright page of each Licensed Product published under this Agreement and on the initial screen of their web sites, for copyrighted material and trademarks owned by Licensor (i) the appropriate copyright notice as set forth in subparagraph b) hereof; (ii) the appropriate trademark notice as set forth in subparagraph c) hereof; and (iii) an appropriate licensing statement as directed in subparagraph d) hereof, as may be amended from time to time by Licensor. The Licensee shall further cause to be printed immediately adjacent to each photograph of each BEANIE BABIES Design and each reproduction of the BEANIE BABIES Poems, the designation "©19__, Ty Inc."
>
> The Licensee shall further cause to be printed on the first page preceding the Buyer's Guide section of the Licensed Products containing any TY INC. Designs published under this Agreement, the appropriate copyright notice as set forth in paragraph b) hereof, as may be amended from time to time by Licensor.  Any permitted usage by Licensor of Ty's trademarks in the headlines or headers of the publications, and the individual names of the Ty Inc. plush products contained in the Price Guide section of the Licensed Products, shall be followed by ® if registered, or ™ if not registered, provided, however, that the "™" designation shall not be placed next to the words "Garcia," "Sparky," "Tabasco," "Doodle," "Seamore," or "Lizz."  In this regard, Licensor will provide Licensee a list of all existing registered and non-registered trademarks and will notify Licensee if any common-law trademarks used by Licensor in connection with the TY INC. Designs become registered with the United States Trademark Office, within thirty (30) days of the issuance of such registration by the United States Trademark Office.
>
> [. . .]

c) The appropriate trademark statement is as follows:
BEANIE BABIES®, Ty®, and the Ty Heart Logo are registered trademarks of Ty Inc. BEANIE™, BEANIES™, and the individual names of most of the Ty Inc. plush animals depicted in this publication are also trademarks of Ty Inc.

d) The appropriate licensing statement is as follows:
This publication (web site) is not sponsored or endorsed by, or otherwise affiliated with Ty Inc. All Copyrights and Trademarks of Ty Inc. are used by permission. All rights reserved.

9. **SPECIFIC UNDERTAKINGS OF LICENSEE**. During the term and any renewal period herein provided for and thereafter, Licensee agrees that:

a) other than the notices set forth in Paragraph 8 above, it will not indicate, on the Licensed Products, or any advertising or marketing materials for the Licensed Products, that the Licensed Products are "Official" Ty Inc. products, or that the Licensed Products are otherwise licensed by, affiliated with or sponsored by Ty Inc., provided, however, that Licensee may indicate, in its advertising and marketing materials to its customers (i.e. the trade, and not the ultimate consumer) that Licensee has obtained a license from Ty Inc. in connection with the Licensed Products, so long as such licensing statement is not the focal point, predominant aspect, or in the headline of the advertising and marketing materials . . .

*Def. Decl. in Support of Rule 56.1(a)(3) Statement of Fact*, Exh. 8.

PIL contends that § 8(d) and § 9(a) of the sample agreement are express disclaimers that the licensed books and magazines were not sponsored or endorsed by, or otherwise affiliated with, Ty. PIL also notes that the licensed products were published under the respective brands of the individual (licensee) publishers. Thus, concludes PIL, "the books were held out to the public specifically as being independent of Ty . . . [s]uch use of the marks could not possibly create the consumer perception of source, sponsorship, affiliation or endorsement required to establish ownership of common law trademark rights." *Def. Rep. Mem.* at 2-3.

In response, Ty claims that its licensees' use of its "well-known" trademarks conveyed to consumers the message that Ty had licensed the publications in question and was controlling the

6

quality of the publications sold under Ty's marks. *See McCarthy*, §18:48 (warning against uncontrolled licensing of a mark and stating that a "trademark carries with it a message that the trademark owner is controlling the nature and quality of the goods or services sold under the mark").[3] Ty, however, failed to offer any evidence to support this claim. The $2.6 million in royalties that Ty collected from its licensees is not evidence that consumers purchased the licensed products because they believed Ty was controlling the publications, particularly in light of the disclaimers Ty's licensees were required to publish.

Ty attempts to raise an issue of material fact by pointing to the language of the licensing agreements, which requires licensees to indicate "[a]ll Copyrights and Trademarks of Ty Inc. are used *by permission*." *Def. Decl.*, Exh. § 8(d) (emphasis added). Ty suggests that this is evidence consumers knew Ty had licensed the use of its marks. Whether or not it constitutes evidence of consumer's knowledge of Ty's decision to license its mark, it is not evidence of consumer perceptions of sponsorship, affiliation or endorsement necessary to confer common law trademark rights on Ty. Viewed in concert with the other, explicit disclaimers demanded by Ty, the words "used by permission" do not allow Ty to avoid summary judgment.

In a final effort to offer facts that would allow it to assert common law rights in its marks, Ty notes that in two instances, licensees were explicitly permitted to inform customers that they

---

[3]Ty also references two cases holding that a licensee's use of a trademark did not strip the licensor of trademark rights. *See General Motors Corp. v. Gibson Chemical & Oil Corp.*, 786 F.2d 105, 110 (2d Cir. 1986) (licensees do not misrepresent source of product; the licensee whose name appears on the product is the source of the product); *Financial Matters, Inc. v. Pepsico, Inc.*, 806 F. Supp. 480, 482 n.2 (S.D.N.Y. 1992) ("the public need not know the name of the trademark owner for their (sic) to be goodwill in a mark"). I do not find these cases particularly instructive, as the issue is not whether Ty's licensees stripped Ty of its trademark rights but whether Ty can assert common law rights in the mark based on the manner in which the licensees used the mark.

had obtained a license from Ty. H&S Media, Inc. received permission to inform readers that it had entered into a license with Ty in one issue of its magazine and for two weeks on its website. Tuff Stuff Publications was permitted to send a letter to customers indicating that its products are licensed by Ty. This is not, however, "compelling evidence that Ty has establish[ed] common law rights" in its trademarks by virtue of its licensees' use of the marks. *Pl. Resp. Br.* at 6. Absent other evidence, these limited disclosures are not sufficient to raise questions of material fact regarding consumer perceptions of Ty's affiliation with, or sponsorship or endorsement of the licensed publications. PIL's motion for summary judgment of Ty's common law trademark infringement claims is granted.[4]

## II. Ty's Claim of Infringement of its Registered Marks

### A. The Nominative Fair Use Defense

As a defense to Ty's allegation of infringement of its registered marks, PIL asserts that its use of Ty's two marks (the Beanie Babies mark and the Ty Heart Logo) were merely nominative: i.e., used solely to name Ty's product so that PIL might identify and market its own product. The Ninth Circuit Court of Appeals has recognized and upheld this defense in circumstances where the defendant can satisfy a three-part test. *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) (holding that the defendant must show that its product was not reasonably identifiable without the plaintiff's mark; that it used no more of the plaintiff's mark than was reasonably necessary; and that it did not use the mark in a manner likely to suggest sponsorship or endorsement of its product by the plaintiff). PIL claims that it easily satisfies this

---

[4]Because Ty is unable to claim common law rights in its trademarks based on its licensees' use of the marks, there is no need for me to address PIL's argument that if such rights existed, PIL's use of the marks was nominative fair use and therefore non-infringing.

test, and that having successfully alleged nominative fair use, the "likelihood of confusion" element normally essential in trademark infringement cases becomes irrelevant. Another way of putting it is to say that "confusion" in this type of use of a mark is tolerated.

The nominative fair use defense arises in cases when it is conceded – or obvious – that the defendant has used the plaintiff's mark to describe the plaintiff's product. *New Kids*, 971 F.2d at 308. As Judge Kozinski first noted, "[s]uch *nominative use* of a mark – where the only word reasonably available to describe a particular thing is pressed into service – lies outside the strictures of trademark law."[5] *Id.* (emphasis in original). Ten years later, the Ninth Circuit explained that the type of fair use recognized in *New Kids* naturally extends to situations in which the defendant uses the plaintiff's mark to describe the plaintiff's product *"even if the defendant's ultimate goal is to describe his own product." Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis in original). The Court observed that "[t]his is in fact the standard case of nominative fair use: Only rarely, if ever, will a defendant choose to refer to the plaintiff's product unless that reference ultimately helps to describe the defendant's own product." *Id.* at 1151, n. 8.

Much of the parties' present disagreement centers around the relationship between the nominative fair use defense and the existence of a likelihood of confusion (the standard for demonstrating infringement). One treatise refers to nominative fair use as a type of "non-confusing" fair use. *McCarthy*, § 23:11 ("[t]his has been dubbed a non-confusing 'nominative

---

[5]The term "nominative fair use" might just as easily have been labeled "denominative fair use," "proper name fair use," "reference fair use," "signifying fair use," or, *apropos* of the parties in this case, "tag fair use." (I suppose Judge Kozinksi would call this exercise synonymative analysis.)

use' because it 'names' the real owner of the mark").  It is possible, I suppose, that a defendant's (or junior user's) use of a plaintiff's (or senior user's) mark to identify the plaintiff's product may not always be confusing.  *See, e.g.*, *New Kids*, 971 F.2d at 307-08 (finding that the newspapers' use of a band's mark did not constitute unfair competition; the dispute belonged to a "class of cases where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one).  However, the *Cairns* version of the defense (i.e., when the defendant uses the plaintiff's mark with the ultimate purpose of describing its own product) extends the doctrine beyond McCarthy's presumptively non-confusing nominative use to a use that, while nominative, is *presumptively confusing*.  Consider the facts of the present case.  Defendant PIL includes Ty's mark within the title of its own book, *For the Love of Beanie Babies*.  Absent other information, PIL's use of Ty's mark is inherently, almost inescapably confusing: standing alone, a consumer cannot tell whether PIL's product is sponsored by, endorsed by or affiliated with Ty.

Judge Kozinski's opinion for the Court recognized this dilemma and abandoned the likelihood of confusion test in cases of nominative use.  *Id*. at 308.  In its place, the Court established a test better suited to the distinctive situation in which a defendant uses the plaintiff's mark in order to identify (name) the plaintiff's product.  *Id*.  This is not a simple augmentation of the likelihood of confusion test.  Rather, the test assumes a likelihood of confusion, and notwithstanding that confusion, provides an opportunity to determine whether the defendant's use of the mark infringes or can be defended as "fair use."[6]

---

[6]*Cf. Restatement (Third) of Unfair Competition* § 28 (1995).  The Restatement notes a "substantial uncertainty regarding the nature of the fair use doctrine" and its relationship to the likelihood of confusion analysis.  RST (3rd) § 28 cmt. b.  However, the Restatement excludes from "fair use" the type of nominative use identified by the Ninth Circuit in *New Kids* and

The Court of Appeals for the Seventh Circuit has not ruled on the applicability of the nominative fair use defense, nor the standards by which a claim of nominative fair use should be evaluated.[7] There is also no guiding precedent within this Circuit on the relationship between a nominative fair use defense and the likelihood of confusion test for infringement. However, the Seventh Circuit has ruled that a finding of a likelihood of confusion does not preclude consideration of the classic (descriptive) fair use defense. *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995) (finding that confusion is not inconsistent with a fair use defense). That reasoning was recently approved by the Supreme Court. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 125 S. Ct. 542, 550 (2004) (finding that a party raising the defense of descriptive fair use is not required to negate the likelihood that its use of the mark will confuse customers about the origin of the goods or services).

Focusing on the text of 15 U.S.C. § 1114 (establishing the likelihood of confusion as the benchmark for determining trademark infringement) and 15 U.S.C. § 1115 (b)(4) (establishing the fair use defense) and employing traditional canons of statutory interpretation, the Court noted that Congress placed upon the party claiming infringement the burden of proving the likelihood of confusion in § 1114, but "said nothing about likelihood of confusion in setting out the

_____

*Cairns*.

> The term "fair use" is also occasionally applied to the use of another's trademark for the purpose of referring to the owner of the mark or to the owner's goods or services [citing *New Kids*]. However, such a use does not implicate the private and public interest in preserving access to the original lexicographic meaning of the descriptive terms and is not within the scope of this Section ["Descriptive Use"].

*Id*. at Rep. Notes cmt. a. The nominative fair use defense finds no clear home in the Restatement; likewise, its relationship to the likelihood of confusion test is uncertain.

[7] *Cf. August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616 (7th Cir. 1995) (considering a defendant's use of the plaintiff's mark for purposes of comparison rather than identification).

elements of the fair use defense in § 1115(b)(4)." *Id*. at 548. Moreover, both the statute and the common law of unfair competition support the premise that fair use can occur along with some degree of confusion. *Id*. at 548-550. While the Supreme Court specifically declined to address the nominative fair use defense, I am persuaded that its logic applies with similar force to defendants pursuing the defense of nominative fair use despite the almost certain likelihood of confusion regarding the source of the mark. While this does not mean that consumer confusion is not relevant to the issue of fair use (*Id*. at 551), it does suggest that I should not disregard a defense of nominative fair use simply because a likelihood of confusion exists. The *New Kids* test provides sound criteria for assessing when nominative use is fair or unfair, despite a likelihood of confusion among consumers.

Within the Northern District of Illinois, two Judges have recognized the potential for a nominative fair use defense and applied *New Kids* test. In an unpublished opinion, Judge Kocoras considered a plaintiff's motion to strike a defendant's affirmative defense of nominative fair use. *R. J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2001 U.S. Dist. LEXIS 8896 at *18 (N.D. Ill. June 28, 2001). Applying a truncated version of the defense, my colleague found the defendant's claim of nominative fair use legally insufficient, because the defendant failed to show that its use of the mark was unlikely to suggest the plaintiff's sponsorship, endorsement of or affiliation with the defendant's product. *Id*. In 2002, Judge Lindberg issued an opinion endorsing the *New Kids* test; but like Judge Kocoras, he found the defendant's use of the plaintiff's mark more than merely nominative. *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 843 (N.D. Ill. 2002). Judge Lindberg then proceeded to apply the traditional likelihood of confusion test for trademark infringement, a step of the analysis that is unnecessary. *Id*.

The Court of Appeals for the Sixth Circuit has explicitly declined to adopt the nominative fair use defense, finding that its traditional likelihood of confusion test sufficiently captures the potential for trademark misuse. *PACCAR, Inc. v. Telescan Techs., L.L.C.*, 319 F.3d 243, 256 (6th Cir. 2003), *overruled in part*, *K. P. Permanent Make-Up*, 125 S. Ct. at 547. In dicta, the Court observed that even if the defense applied, the defendant in that particular case could not satisfy the elements of the *New Kids* test. *Id.* (finding that defendant's use of the marks "go beyond using the marks 'as is reasonably necessary to identify'" the plaintiff's products). However, the Court also conflated the *New Kids* analysis with the likelihood of confusion analysis, noting that the defendant's use of the plaintiff's marks in its domain names created a "likelihood of confusion as to whether its web sites are affiliated with [the plaintiff]." *Id.*

In contrast, the Court of Appeals for the Fifth Circuit has adopted the nominative fair use defense and at least part of the *New Kids* analysis; but in so doing, it also blended the *New Kids* and likelihood of confusion analyses. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 545 (5th Cir. 1998) ("[w]hile a claim that the use was to identify the markholder's goods or services is analogous to the statutory fair-use defense, it is in actuality a claim that the use is noninfringing and thus creates no likelihood of confusion"). Ultimately, the Fifth Circuit concludes that the test for nominative fair use must be synonymous with the likelihood of confusion analysis. *See Pebble Beach* at 546 ("where a nominative use of a mark occurs without any implication of affiliation, sponsorship, or endorsement – *i.e., a likelihood of confusion* – the use 'lies outside the strictures of trademark law'") (quoting *New Kids*) (emphasis added). I respectfully disagree. A likelihood of confusion should not bar the door to a nominative use defense; if the use is necessary, as *Cairns* suggests, then other, more refined criteria are needed to determine if the use might still be fair. The *New Kids* criteria are far better suited to that task.

The *New Kids* analysis finds nominative use to be fair only after an analysis of both the nature and extent of the defendant's use of the mark, and a determination that the defendant did not do anything in conjunction with use of the mark to suggest sponsorship or endorsement. *New Kids*, 971 F.2d at 308. This test captures the difference between confusing use and misleading use – a distinction that is critical in cases alleging the nominative fair use. *Cf. Sunmark*, 64 F.3d at 1059 ("[w]hen the products involved are similar, "likelihood of confusion *may* amount to using a word in a 'misleading' way, violating 28 U.S.C. § 1125(a)(1) – not because the likelihood of confusion makes the use nondescriptive, but because the confusion about the product's source shows that the words are being used, de facto, as a mark") (emphasis added).[8]

Applied to the facts of this case, the *New Kids* nominative fair use test would require PIL to prove: 1) Ty's Beanie Baby toys, the subject of its books and magazines, are not readily identifiable without use of the marks; 2) PIL only used as much of the marks as was reasonably necessary to identify the toys; and 3) PIL did nothing in conjunction with its use of the mark to suggest sponsorship or endorsement of its product by Ty. 971 F.2d at 308. Ty does not contest that PIL satisfies the first element of the test. Instead, it suggests that issues of fact exist with respect to the latter two factors such that summary judgment on the grounds of nominative fair use must be denied. Because issues of fact exist with respect to the second prong of the test (as explained below), I cannot determine on summary judgment whether PIL's nominative use was fair. Summary judgment on the basis of the defense is inappropriate. However, as this case

---

[8]While *Sunmark* involved a case of descriptive fair use, which is available only when the words of description are used "otherwise than as a mark" (28 U.S.C. § 1125(a)), its recognition of the line between confusion and misleading use is just as compelling in cases of nominative fair use, in which use of the mark may be necessary for purposes of identification.

involves nominative use, I do not consider the traditional likelihood of confusion analysis as a ground for granting or denying PIL's motion for summary judgment.

### B. PIL's Claim of Nominative Fair Use

#### i. PIL's Use of the Beanie Babies Mark

PIL claims that as a matter of law, its use of the "Beanie Babies" mark in the title of its publications is nominative fair use, in that it is not used to differentiate PIL's books from those of other publishers, but to identify Ty's plush toys as the subject of its books. Applying *New Kid's* three-part nominative fair use test to PIL's use of the mark, I find sufficient issues of fact to prevent PIL from relying on the defense to win summary judgment. Under the second prong of the test, PIL contends that it used no more of the Beanie Babies mark in the titles of its publications than was reasonably necessary to describe the subject of the books. Ty contends that it was unreasonable for PIL to highlight or offset the mark in the manner it did; for example, by using different colors, font sizes and styles for the words Beanie Babies than for other words in the titles.[9] PIL defends these decisions by claiming that "such use is necessary to efficiently inform shoppers, who often spend mere seconds viewing a book cover before making a purchase decision, what the book is about." *Def. Mem.* at 14.

---

[9]In the title of *For the Love of Beanie Babies*, the mark "Beanie Babies" appears in bright letters, outlined in gold, with a black background that creates a shadowing effect; other words appear in solid black print. In the smaller paperback version of the *Beanie Babies Collector's Guide*, the mark "Beanie Babies" appears in bright, multi-colored letters while other words appear in predominantly black lettering; the letters of the mark are also twice as high and wide as the lettering in the other words. Finally, in the magazine format of the collector's guide, the mark "Beanie Babies" appears in blue or red print, while other words appear in solid black. The mark is printed with capital letters, again with greater height and width than other words in the title.

In this case, whether the extent of PIL's use of Ty's mark to describe its products was reasonable is a question of fact. *Cf. Cairns*, 292 F.3d at 1154 (holding that defendant's prominent reference to Princess Diana in the title of its product – "Diana, Princess of Wales Porcelain Portrait Doll" – was fair use). This case, involving the style and placement of the plaintiff's mark, rather than its mere use, is more appropriately compared to *World Impressions*, in which Judge Lindberg held that the plaintiff's stylized use of the mark "Disneyland" on its map of California tourist attractions negated the fair use defense. 235 F. Supp. 2d at 843. The plaintiff's reliance on distinctive lettering, rather than plain lettering, went "beyond mere nominative use." *Id.*

I recognize that in *Cairns* the Second Circuit held that "[w]here, as in the present case, the description of the defendant's product depends on the description of the plaintiff's product, more use of the plaintiff's trademark is 'reasonably necessary to identify the plaintiff's product' than in cases where the description of the defendant's product does *not* depend on the description of the plaintiff's product." *Cairns*, 292 F.3d at 1154. However, that language followed a discussion of two other cases in which the number of times a mark was used, rather than the style in which the mark was presented or highlighted, was central to a court's decision. While instructive, the holding of *Cairns* does not compel the result PIL now seeks. While PIL may have been entitled to use "more" of Ty's mark in order to successfully describe its own product, the manner in which it did so arguably exceeds the limits of nominative fair use. I cannot conclude that no reasonable fact finder would agree with Ty. Therefore, PIL cannot rely on the

nominative fair use defense to win summary judgment on Ty's claim of trademark infringement.[10]

As for the third prong of the *New Kids* test, Judge Lindberg's decision in *World Impressions* suggests that PIL is not entitled to the defense of nominative fair use because its use of the mark, admittedly highlighted in order to attract consumer's attention (*Def. Mem.* at 14), goes beyond identification and implies sponsorship or endorsement by Ty.

> Although the Disney marks may not be larger than the other identifiers on plaintiff's maps, plaintiff uses the stylized form of the word "Disneyland" and the distinctive castle design as "attention-getting symbols" [quoting *Sands, Taylor and Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992)] . . . By using the stylized form of [the mark] and the castle design, rather than a plain rendition of the word "Disneyland," plaintiff does more than simply identify Disneyland's location on a map. Instead, it implies that Disney sponsored or endorsed its maps."

*World Impressions*, 235 F. Supp. 2d at 843. PIL, however, asserts that its statement explicitly disclaiming sponsorship or affiliation with Ty satisfies the third prong of the *New Kids* nominative fair use test.

---

[10]In cases of trademark infringement subject to the likelihood of confusion analysis, the standard for gaining summary judgment is high. *See AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 616 (7th Cir. 1993) (reversing grant of summary judgment for defendant where issues of fact existed regarding likelihood of consumer confusion); *see also CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677 (7th Cir. 2001) (holding that the question of whether likelihood of confusion exists may only be resolved on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered") (quoting *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 173 (7th Cir. 1996)). While I firmly believe that the likelihood of confusion and nominative fair use analyses are conceptually distinct, I also believe that the standard for granting summary judgment would likely be the same under both analyses, should the Seventh Circuit recognize the latter. The questions of fact present in this case, while not overwhelming, are sufficient for a denial of summary judgment under the Seventh Circuit's standard in trademark infringement cases not involving nominative use.

Neither party has pointed to (nor can I find) any binding cases that address the impact of a disclaimer upon the third prong of the *New Kids* test. *Cf. Cairns*, 292 F.3d at 1154-55 (upholding summary judgment on the basis of nominative fair use for a defendant who failed to expressly claim sponsorship or endorsement). In my earlier decision denying summary judgment to Ty, I found PIL's use of its own marks, as well as its disclaimer, to be points in PIL's favor (albeit within the likelihood of confusion analysis). *Ty, Inc. v. Publ'ns Int'l Ltd.*, 2000 U.S. Dist. LEXIS 15382, 99 C 5565, at *35 (N.D. Ill. Oct. 4, 2000). In this case, PIL's disclaimer appears on the front cover of every book; on one publication, it also appeared in bold letters. In light of these facts, Ty must respond with evidence raising an issue of fact that suggests PIL's use of the mark suggested sponsorship or endorsement by Ty. Ty has failed to do so. Therefore, PIL has satisfied the third prong of the nominative fair use defense. However, given PIL's failure to satisfy the second prong of the defense, it is not entitled to summary judgment on Ty's claim of trademark infringement for use of the "Beanie Babies" mark on its covers.[11]

---

[11]PIL also moves for summary judgment on the ground that its use of Ty's mark in the titles of its books and magazines is presumptively non-infringing. *See Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989). I considered the *Rogers* defense in ruling on Ty's earlier motion for summary judgment of its trademark infringement claims. *Ty, Inc.*, 2000 U.S. Dist. LEXIS at *33-35. In that decision, I found that PIL had not displayed Ty's trademarks in its book and magazine titles in a manner that "conjures up a visual image prominently associated" with Ty's works. *Id*. (quoting *Twin Peaks Productions, Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1380 (2d Cir. 1993)). However, I have now held that there are issues of fact surrounding the reasonableness of the extent to which PIL used the mark in its titles. Therefore, I will not grant summary judgment in PIL's favor on the basis of *Rogers.*

In its opening memorandum PIL also relied heavily on *Mattel Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002) to argue that its use of the contested mark in its titles cannot constitute trademark infringement as a matter of law. In *Mattel*, the Ninth Circuit upheld a grant of summary judgment for the defendants when it found that their use of "Barbie" in a song title did not explicitly suggest that the song was produced or otherwise associated with the plaintiff toy manufacturer. That decision does not compel a grant of summary judgment in PIL's favor in this case. There is a sufficient difference between pop songs that use a protected mark and collectors' guides that use the mark of the product featured in the guide, that it is not inconsistent

*ii. PIL's Use of the Ty Heart Logo*

PIL also contends that it is entitled to the defense of nominative fair use with respect to its depiction of the Ty Heart Logo ("the logo") in its publications. The logo appears on the front cover of all of the contested publications, and on the back cover of several. The logo also appears on most of the pages of the collector's guides.[12] While the number of times the image appears is not dispositive, it is relevant to the factual issue of whether PIL used more of the logo than reasonably necessary for its product.

Ty argues that PIL could have avoided using the "hangtags" that depict Ty's logo by detaching the cardboard tags before photographing the toys; by photographing the toys from an angle that did not include the tags bearing the logo; or by editing the photographs. PIL responds that the tags bearing the logos are "very important to collectors," and that "eliminating the tags entirely or replacing them with bogus tags would defeat the purpose of the photographs, which is to show what the products should look like as released in the marketplace by Ty." *Def. Rep. Br.* at 11. PIL, however, fails to point to any evidence suggesting that consumers would not purchase its product had the publisher used fewer images of the tags affixed to the toys. The hangtags do not appear on every page of each of PIL's publications or on every photograph of a Ty product; the fact that some of the toys are shown without the tag suggests that the use of the tag was not always necessary. While this issue may ultimately be resolved in PIL's favor, I find that a

_____

for the former to support a holding of non-infringement as a matter of law while the latter cannot.

[12]The logo appears on 77% of the pages in the first version of *For the Love of Beanie Babies*; on 82% of the pages of the second version of the same book; and on 64% of the pages in the third version. The logo appears 106 times, or on 43% of the pages in the paperback version of the *Beanie Babies Collector's Guide*, while the three "magazine" versions of the guide have a total of 109, 98 and 104 photographs of the logos (comprising 57%, 61% and 65% of the pages, respectively).

genuine issue of fact exists on the issue of whether PIL used more of Ty's tags than necessary for its publications.

Furthermore, the cases on which PIL relies do not support its position that its use of Ty's logo was reasonable as a matter of law. PIL relies heavily on a case from the Northern District of California, in which the defendant film distributors' use of the plaintiff's "Slip 'N Slide" mark in a movie was held to be nominative use. *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254 (N.D. Cal. 2003). Considering the second prong of the *New Kids* test, the court noted that "[t]o identify the slide as a toy, it was at once sensible and necessary to refer to the slide by its popular name." *Id*. at 1263. In this case, whether PIL's depiction of the tag bearing Ty's logo was similarly sensible and necessary is an issue of fact. A trier of fact might reasonably find that PIL's depiction of Ty's logo was unnecessary or even abusive. *Id.* at 1264. As the *Cairns* court noted, "what is 'reasonably necessary to identify the plaintiff's product' differs from case to case." *Cairns*, 292 F.3d at 1154 (comparing *Playboy Enters. v. Welles*, 279 F.3d 796, 804 (9th Cir. 2002) in which defendant's repeated use of plaintiff Playboy Enterprises' mark was not necessary to describe her status as a former Playmate on her website, with *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1142 (C.D. Cal. 1998) in which repeated use of "Barbie" and "Ken" was reasonably necessary "for the purposes of parody").

In *Cairns*, the court considered it doubtful that every Franklin Mint customer could recognize Princess Diana's features on the doll without reference to her name. *Id*. However, one might reasonably expect that most collectors of *Beanie Babies* could recognize the plush toys without seeing the Ty handtag displaying the Heart Logo. On the other hand, display of the logos might be reasonably necessary to assure customers that the pictured products were, in fact, Ty's products and not copycat products. As I noted in an earlier decision in this case, consumers of

PIL's collectors' books are likely to know something about Beanie Babies, and to be concerned with the authenticity of Ty's plush toys and identifying tags. *Ty, Inc.*, 2000 U.S. Dist. LEXIS at *39. This issue, however, is one of fact, and I am unwilling to decide the question as a matter of law on a motion for summary judgment when a reasonable fact finder might agree with Ty.

For the same reasons noted in the previous section, I find that under the third prong of the *New Kids* test, Ty can point to no issues of material fact suggesting that PIL did anything in connection with its use of the logo to imply sponsorship or endorsement. However, PIL's motion for summary judgment with respect to Ty's claim of trademark infringement based on PIL's use of the Ty Heart Logo is denied. As noted above, PIL has failed to establish as a matter of law that it used no more of the logo than reasonably necessary for its publications.


For all of these reasons, PIL's motion for summary judgment is GRANTED IN PART and DENIED IN PART. PIL's motion for summary judgment of Ty's common law claim of infringement is granted; PIL's motion for summary judgment of Ty's claim of infringement of registered trademarks is denied.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: February 25, 2005